UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIA WOOD,

                    Plaintiff,

                                    5:09-CV-0640

v.                                 (GTS/GHL)

MAGUIRE AUTO. LLC, as successor to Bill
Cooke Imports, Inc., a/k/a Bill Cooke Imports,
Inc.; and VOLVO CARS OF N. AM., LLC;
_____

VOLVO CARS OF N. AM., LLC;

                    Cross-Claimant,

v.

MAGUIRE AUTO. LLC, as successor to Bill
Cooke Imports, Inc., a/k/a Bill Cooke Imports,
Inc.,

                    Cross-Defendant.
_____

APPEARANCES:                        OF COUNSEL:

THE LANGONE LAW FIRM, LLC        CHRISTOPHER V. LANGONE, ESQ.
  Counsel for Plaintiff
207 Texas Lane
Ithaca, NY 14850

WILLIAMSON CLUNE & STEVENS      JOHN ALDEN STEVENS, ESQ.
  Counsel for Defendant Bill Cooke Imports, Inc.
317 N. Tioga St., P.O. Box 126
Ithaca, NY 14851

PORTER NORDBY & HOWE LLP        DAVID S. HOWE, ESQ.
  Counsel for Defendant Volvo Cars of     ERIC C. NORDBY, ESQ.
  N. Am., LLC
316 S. Clinton St., Suite 400
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this breach-of-warranty and fraud action filed by Julia Wood ("Plaintiff") against Maguire Automotive LLC and Volvo Cars of North America, LLC ("Defendants"), are Defendants' motions to dismiss for lack of subject-matter jurisdiction.  (Dkt. Nos. 28, 30.)  For the reasons set forth below, Defendants' motions are granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following four claims arising from her purchase of a motor vehicle in June 2006: (1) Defendants breached an implied warranty of merchantability, in violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2310[d]), by selling her a used car that was not in a merchantable condition in that it was not fit for the ordinary purposes for which such goods are used and would not pass in trade as a certified used car under the contract description; (2) Defendant Volvo Cars of North America, LLC ("Volvo"), violated Section 349 of the New York Consumer Protection Act and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) by engaging in deceptive acts and omitting material facts of which it was aware, which resulted in public injury; (3) Defendants committed common-law fraudulent misrepresentation and fraudulent concealment by (a) falsely representing that the used car was certified, and (b) making a gross misrepresentation about the car's true condition; and (4) through Defendants' breach of implied warranty and acts of fraud, they conferred on Plaintiff the right to revoke her acceptance of the car and cancel the sales contract under Section 2310(d) of the Magnuson-Moss Warranty Act and Sections 2-608 and 2-721 of the Uniform Commercial Code.  (*See generally* Dkt. No. 21 [Plf.'s Am. Compl.].)  Familiarity with the factual allegations giving rise to these four claims in

2

Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

**B.      Defendants' Motions**

Generally, in support of their motions to dismiss for lack of subject-matter jurisdiction, Defendants argue as follows: (1) Plaintiff is not entitled to punitive damages under either the Magnuson-Moss Warranty Act or 28 U.S.C. § 1332, under the circumstances; and (2) as a result, the amount of available damages that Plaintiff seeks fails to exceed the jurisdictional amount of $50,000 under the Magnuson-Moss Warranty Act, or $75,000 under 28 U.S.C. § 1332.  (*See generally* Dkt. No. 28, Attach. 3 [Def. Maguire Auto.'s Memo. of Law]; Dkt. No. 30, Attach. 2 [Def. Volvo Cars' Memo. of Law].)

Generally, in her response to Defendants' motions to dismiss, Plaintiff argues as follows: (1) Illinois law–which governs the fraud claims, including the availability of punitive damages– provides that Plaintiff is entitled to punitive damages; and (2) as a result, Defendants have not shown to *a legal certainty* that her claims do not, and cannot, exceed the jurisdictional amount of $50,000 under the Magnuson-Moss Warranty Act, or $75,000 under 28 U.S.C. § 1332.  (*See generally* Dkt. No. 33 [Plf.'s Response Memo. of Law].)

Generally, in their reply, Defendants argue as follows: (1) New York law–which governs the fraud claims, including the availability of punitive damages–provides that Plaintiff is *not* entitled to punitive damages; and (2) as a result, Plaintiff has not sustained her burden of proving subject-matter jurisdiction by a preponderance of the evidence.  (*See generally* Dkt. No. 35 [Defs.' Joint Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

In reviewing a motion to dismiss for lack of subject-matter jurisdiction, under Fed. R.

Civ. P. 12(b)(1), the court must accept as true all material factual allegations in the complaint.

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  However, unlike the

procedure when reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6), the court is "not to draw inferences from the complaint favorable to Plaintiffs."

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).[1]  This is because, as

explained more fully below, "when the question to be considered is one involving the

---

[1]      *See also Norton v. Larney*, 266 U.S. 511, 515 (1925); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 403 F. App'x 631, 632 (2d Cir. Dec. 22, 2010) (summary order, cited for "persuasive value" in accordance with the Advisory Committee Notes to Fed. R. App. P. 32.1 [a], and cited to "acknowledge[ ] the continued precedential effect" of *J.S. Attica Cent. Sch.*, 386 F.3d 107, 110 [2d Cir. 2004], in accordance with Second Circuit Local Rule § 0.23 as applied by the Second Circuit in *Khan v. Ashcroft*, 352 F.3d 521, 525 [2d Cir. 2003].)  The Court acknowledges that there appears to be some Second Circuit cases suggesting that, when reviewing a motion to dismiss for lack of subject-matter jurisdiction, the court may draw inferences from the complaint favorable to the plaintiff.  *See, e.g.*, *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming district court dismissal, pursuant to Fed. R. Civ. 12[b][1], which was issued after district court "constr[ed] all ambiguities and [drew] all inferences in" plaintiff's favor).  The Court finds such a construction of those cases to be against the weight of better-reasoned Second Circuit case law.  The Court acknowledges that it has issued a decision that may be read as implicitly suggesting a contrary interpretation of the law.  *See Weber v. Align Tech., Inc.*, 07-CV-0535, 2010 WL 2265418, at *9 (N.D.N.Y. June 22, 2010) (stating that, for purposes of pleading subject-matter jurisdiction, a plaintiff "need only plead allegations from which damages attributable to the defendant's conduct might be reasonably inferred").  However, in *Weber*, the Court meant only that the plaintiff need plead factual allegations from which damages attributable to the defendant's conduct might be plausibly suggested.  The Court notes that the jurisdictional outcome of *Weber v. Align Tech., Inc.* (i.e., a ruling that plaintiff had alleged facts plausibly suggesting that the amount in controversy exceeded the jurisdictional amount for class action lawsuits of $5,000,000), turned on factual allegations plausibly suggesting that a proposed class of some 33,100 orthodontia patients suffered a material interruption or cessation of their treatment before completion, resulting in damage to them.  *Weber*, 2010 WL 2265418, at *4, 9.

4

jurisdiction of a federal court, jurisdiction must be shown affirmatively [by the party asserting such jurisdiction], and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  Similarly, unlike the procedure when reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issues." *J.S. ex rel. N.S.*, 386 F.3d at 110.  However, the court "may not rely on conclusory or hearsay statements contained in the affidavits." *Id*.

Because each party argues, *inter alia*, that her/its opponent has failed to satisfy her/its respective burden on the pending motions, the Court finds that a few words are appropriate about the parties' respective burdens on the pending motions.  At all times, "a party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  Granted, this burden may be lightened by the use of "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).  However, of course, this face-of-the-complaint presumption is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy.  *See, e.g., Jordan v. Verizon Corp.*, 08-CV-6414, 2008 WL 5209989, at *4, n.4 (S.D.N.Y. Dec. 10, 2008) ("In this case, however, because the complaint fails even to allege that the claims exceed

$75,000, this [face-of-the-complaint] presumption does not apply.") (Lynch, J.).[2]  In other words,

in the event the complaint does not allege, on its face, facts plausibly suggesting that the amount

in controversy exceeds the jurisdictional minimum, the court need not presume that the general

allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good

faith representation of the actual amount in controversy.[3]  Moreover, in the event the complaint

alleges on its face facts plausibly suggesting that the amount in controversy exceeds the

jurisdictional minimum, a party challenging jurisdiction may rebut this face-of-the-complaint

presumption by showing "to a legal certainty" that the amount in controversy does not meet the

jurisdictional minimum.  *Scherer*, 347 F.3d at 397.

Finally, it is important to note that, under the diversity jurisdiction statute, 28 U.S.C. §

1332, the amount-in-controversy threshold requirement is $75,000, which may be satisfied

through an aggregation of "[d]ifferent state claims brought by a single plaintiff[.]"  *Colavito v.*

---

[2]        *Cf. Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d
59, 63 (2d Cir. 1999) (applying the face-of-the-complaint presumption only after finding that
"Wolde-Meskel's complaint alleged an implied employment contract and contract claims
aggregating over $50,000 in damages").

[3]        *LaSala v. v. E*Trade Sec. LLC*, 05-CV-5869, 2005 WL 2848853, at *5 (S.D.N.Y.
Oct. 31, 2005) ("[A] plaintiff cannot sidestep the jurisdictional question simply by pleading an
indeterminate amount of damages, accompanied by a conclusory statement that the
amount-in-controversy threshold is met. . . . Although doubts regarding whether the
jurisdictional amount is met are resolved in plaintiff's favor, on the present record the Court
simply has no way to determine whether LaSala's allegations of excess compensation reach the
jurisdictional amount. . . . As [a result], plaintiff may replead his claims, but if plaintiff files an
amended complaint, he must establish a reasonable probability that he can meet the required
jurisdictional amount."); *Nanya-Amir El v. 2000 New Century Travel Inc.*, 09-CV-0798, 2009
WL 899679, at *1 (E.D.N.Y. Mar. 27, 2009) ("Plaintiff's amended complaint states that the value
of his lost luggage is $25,000, and that, he is 'entitled to treble damages . . . for $76,000 3 times
the amount I los[t].' . . . However, plaintiff fails to offer a good faith basis for how he arrived at
that amount. . . . Based on plaintiff's submissions, the court concludes that the amount in
controversy fails to suggest a 'reasonable probability' that damages would be in excess of
$75,000, notwithstanding plaintiff's claim for treble damages.").

*New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). However, in order to invoke federal jurisdiction under the Magnuson-Moss Warranty Act, three requirements must be satisfied: (1) the amount in controversy of any individual claim must be at least $25; (2) the overall amount in controversy must be at least $50,000, excluding interest and costs; [and (3) if the action is brought as a class action,] at least one hundred plaintiffs must be named to maintain a class action. 15 U.S.C. § 2310(3)(d).

### B.      Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 28, Part 3 [Def. Maguire Auto.'s Memo. of Law]; Dkt No. 30, Part 2 [Def. Volvo Cars' Memo. of Law]; Dkt. No. 33 [Plf.'s Response Memo. of Law]; Dkt. No. 35 [Defs.' Joint Reply Memo. of Law].) Rather, the Court will discuss those points of law only where necessary below in this Decision and Order.

## III.   ANALYSIS

### A.      Plaintiff's Claim that Defendants Breached the Implied Warranty of Merchantability Under the Magnuson-Moss Warranty Act

As indicated above in Part I.B. of this Decision and Order, Defendants argues that the dismissal of this claim is warranted because (1) Plaintiff is not entitled to punitive damages under the Magnuson-Moss Warranty Act (in part because New York law does not allow for punitive damages for breaches of warranty), and (2) as a result, Plaintiff has not alleged facts plausibly suggesting that the amount of damages sought exceeds the Magnuson-Moss Warranty Act's jurisdictional amount.

Based on the current record, the Court accepts Defendants' argument.  As a general matter, "in breach of warranty suits, which is all that Magnuson-Moss permits, damages ordinarily are limited to the difference between the value of the goods accepted and the value they would have had if they had been as warranted."  *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982); *see also Wood v. Gen. Motors Corp.*, 08-CV-5224, 2010 WL 3613812, at *11 (E.D.N.Y. Aug. 23, 2010) (rejecting plaintiff's claim for alleged consequential damages for a breach of warranty claim under Magnuson-Moss Warranty Act).  Thus, Plaintiff would normally be entitled to only $10,400.[4]

However, punitive damages are recoverable under the Magnuson-Moss Warranty Act if they would be recoverable in a breach-of-warranty action brought under governing state law.  *See Rosen v. Gupta*, No. 99-7226, 2000 WL 639964, at *1 (2d Cir. May 17, 2000).  Under both Illinois and New York law, punitive damages in breach-of-warranty actions are recoverable where the breach amounts to an independent tort.  *See McNair v. McGrath Lexus-Colosimo, LTS., d/b/a McGrath Lexus*, 11 F. Supp.2d 990, 993 (N.D. Ill. 1998); *Rosen*, 2000 WL 639964, at *1.  In the Amended Complaint, Plaintiff alleges facts plausibly suggesting that Defendant Volvo's breach amounted to an independent tort; common-law fraud.  However, unlike on her claim for common-law fraud, Plaintiff does *not* request punitive damages relief on her Magnuson-Moss Warranty Act claim.  As a result, the Court cannot liberally construe the Amended Complaint to include a claim for punitive damages on the Magnuson-Moss Warranty Act claim.[5]

---

[4]        The sale price was $20,800, and the estimated actual value at the time of sale was $10,400.  (Dkt. No. 21, Exh. C.)

[5]        The Court notes that in 2007, the Supreme Court created a clarified pleading standard requiring facts that "raise the right to relief above the speculative level" to the plausible level in order for the claim to survive.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007),

For these reasons, the Court finds that this claim is dismissed for lack of subject-matter jurisdiction.

### B.   Plaintiff's Claim that Defendant Volvo Engaged in Deceptive Acts and Omitted Material Facts in Violation of the New York Consumer Fraud Act and Illinois Consumer Fraud Act

As indicated above in Part I.B of this Decision and Order, Defendant Volvo seeks the dismissal of this claim because, under the circumstances, (1) Plaintiff is not entitled to punitive damages under 28 U.S.C. § 1332, and (2) as a result, the amount of available damages that Plaintiff seeks fails to exceed the jurisdictional amount of $75,000.  Based on the current record, the Court accepts Defendant Volvo's argument.

### 1.   Defendant Volvo's Argument that Plaintiff Is Not Entitled to Punitive Damages Under the Circumstances

To thoroughly analyze this argument, the Court must engage in a choice-of-law analysis. Generally, a federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine choice of law.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").  "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether

---

citing 5C Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Proc.* §1216 (3d ed. 2004); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC*, 568 F.3d 374 (2d Cir. 2009).  The Court notes further that "a heightened level of judicial scrutiny is imposed on cases where punitive damages are utilized to satisfy the amount in controversy requirement." *KT Export v. Wolf Canyon of Am., Inc., USA*, 09-CV-7123, 2010 WL 5249231, at *1 (S.D.N.Y. Dec. 17, 2010) (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 [2d Cir. 1972]).  Thus, the fact that Plaintiff asserts a general request for punitive damages elsewhere in her Complaint is not enough to satisfy the heightened level of judicial scrutiny necessary to conclude that the amount in controversy has been satisfied with regard to her Magnuson-Moss Warranty Act claim.  *See Bernshteyn v. Feldman*, 04-CV-1774, 2006 WL 2516514, at *2 (S.D.N.Y. Aug. 29, 2006) ("Plaintiffs' failure to explain or justify their claim for punitive damages defeats any attempt to include those damages in the calculation of the amount in controversy.").

there is an actual conflict of laws." *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y. 1993).  An actual conflict is present, "[w]here the applicable law from each jurisdiction provides different substantive rules." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." *Curley,* 153 F.3d at 12.

The Court will now consider this question with regard to Plaintiff's consumer fraud claim.

### a.    Conflict-of-Law Analysis

Plaintiff claims that Defendant Volvo violated the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, and the Illinois Consumer Protection Act, 815 ILCS 505/1 *et seq*. Plaintiff argues that Illinois law governs this fraud claim, including the availability of punitive damages.  However, Defendant Volvo argues that New York law governs.

Both N.Y. Gen. Bus. Law § 349 and the Illinois Consumer Fraud Act allow a private right of action.  However, they differ in regards to the measure of allowable damages.  Under N.Y. Gen. Bus. Law § 349, consumers may recover actual damages in any amount, and may recover treble damages under § 349(h) up to $1,000.  *See Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 147 (N.Y. App. Div., 2d Dept. 1995); *Hart v. Moore*, 587 N.Y.S.2d 477, 479-80  (N.Y. Sup. Ct., Westchester Cnty. 1992).  Moreover, plaintiffs may seek both treble damages and punitive damages.  *See Volt Sys. Dev. Corp. v. Raytheon Co.*, 155 A.D.2d 309 (N.Y. App. Div., 1st Dept. 1989); *Bianchi v. Hood*, 128 A.D.2d 1007, 1007-08 (N.Y. 1987).  However, punitive damages may be awarded only where the total award, together with the punitive damages, does not exceed $1,000.  *Hart*, 587 N.Y.S.2d at 480; *Bristol Harbour Assoc., L.P. v. Home Ins. Co.*, 244 A.D.2d 885 (N.Y. App. Div., 4th Dept. 1997).

Under the Illinois Consumer Fraud Act, it appears that punitive damages may be awarded without limitation.[6]  This conclusion is supported by the fact that the specific damages provision that at one time called for a limitation where a plaintiff brought suit against a defendant who was a new or used car dealer was declared violative of the state's constitution by the Supreme Court of Illinois in 2003.  *See, Allen v. Woodfield Chevrolet, Inc.*, 802 N.E.2d 752, 765 (Ill. 2003) (holding that amendments to Consumer Fraud and Deceptive Business Practices Act, changing substantive and procedural requirements for consumer fraud claims against a single group of defendants, namely, new and used vehicle dealers, violated state constitutional prohibition of special legislation).

As a result, this Court finds that a conflict exists between the respective consumer fraud acts and their measure of damages, particularly in regard to punitive damage awards.

**b.      Contacts Analysis**

After determining that a conflict of law exists, the Court must next conduct a contacts analysis in order to determine which state's law applies.  When addressing choice-of-law conflicts in tort actions, such as the current action (which involves a claim of consumer fraud), courts applying New York law apply the "interest analysis" test.  *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 683-84 (N.Y. 1985); *Istim, Inc. v. Chem. Bank*, 581 N.E.2d 1042, 1044 (N.Y. 1991); *Stein v. Siegel*, 50 A.D.2d 916 (N.Y. App. Div., 2d Dept. 1975).  Under the interest

---

[6]      *See* 815 ILCS 505/10a(a) (2000) ("Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.  The court, in its discretion may award actual economic damages or any other relief, which the court deems proper; provided, however, that no award of punitive damages may be assessed under this Section against a [defendant] who is a new vehicle dealer or used vehicle dealer...unless the conduct engaged in was willful or intentional and done with evil motive or reckless indifference to the rights of others.  Proof of public injury, a pattern, or an effect on consumers and the public interest generally shall be required in order to state a cause of action under this Section [against such a defendant].").

analysis test, "'the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining state interests are those which relate to the purpose of the particular law in conflict.'" *Schultz*, 480 N.E.2d at 684 (quoting *Miller v. Miller*, 237 N.E.2d 877, 879 [N.Y. 1968]) (finding that the two most important factors for a court to consider are domicile and the locus of the tort).

In all interest analyses, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (quoting *Schultz*, 491 N.Y.S.2d at 95, 480 N.E.2d at 684).  If the conflict involves standards of conduct, the law of the locus jurisdiction will predominate due to the jurisdiction's interest in regulating conduct within its borders and protecting the expectations of the parties whose conduct is at issue.  *Schultz*, 480 N.E.2d at 683-85; *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996) ("Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws, . . . whereas those cases concerning loss allocation will turn in significant part on the domiciles of the parties . . . ."); *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995).  Where "laws regulating allegedly fraudulent conduct" are at issue, "the proper body of law to be applied turns on the locus of the tort." *Krock*, 97 F.3d at 646.

Here, Plaintiff alleges that Defendant Volvo violated the Consumer Fraud Act by falsely representing that the used car, located in New York, was "certified." (Dkt. No. 21, at ¶ 66.) More specifically, Plaintiff alleges that, on the day of the transaction, which took place in New York,  Defendant Volvo, through its agent Maguire Auto, LLC, falsely represented to Plaintiff that the car was a "Volvo certified pre-owned vehicle."  (*Id*. at ¶ 63.)  Plaintiff further alleges

that the car turned out to be a "rebuilt wreck," a fact of which Defendant was (allegedly) aware at the time of the transaction, which, again, took place in New York.  (*Id*. at ¶¶ 63, 64.)

Based on these allegations, the Court finds that the locus of the tort was New York, which has the strongest interest in deterring such alleged tortious conduct within its borders. The Court also recognizes that New York has statutory laws such as Section 349 to regulate the activity of businesses that conduct business in New York, and to protect the consumer.  As a result, the Court finds that New York substantive law governs Plaintiff's consumer fraud claim.

### c.    Application of the New York Consumer Protection Act

In the event that Defendant Volvo violated the New York Consumer Protection Act, Plaintiff would be entitled to a refund of the purchase price, recovery for repair costs, expenses in connection with financing the purchase, and loss-of-use damages *before* she informed Defendants that she was revoking the agreement.  *See Vernon v. Potamkin Cadillac Corp.*, 118 A.D.2d 698, 700 (N.Y. App. Div., 2d Dept. 1986) (noting that plaintiffs, who sought rescission or cancellation of the agreement, "were entitled to a refund of the purchase price, as well as any incidental damages reasonably incurred and resulting from the seller's breach[, which includes] [t]he plaintiffs' expenses in connection with financing the purchase[, but] . . . must surrender the vehicle and transfer title thereto back to [defendant] in order to avoid double recovery"); *Carbo Indus. v. Becker Chevrolet*, 112 A.D.2d 336, 340 (N.Y. App. Div., 2d Dept. 1985) (finding that plaintiff, who leased vehicle to third party that encountered mechanical problems with the vehicle, was entitled to recover as damages "the cost of replacing the defective engine with a working secondhand engine" necessary to "render[] the car usable," the monthly rental charge that the vehicle would have generated had it "functioned as warranted, . . . [and] towing charges and other charges incurred by plaintiffs in diagnosing the problem with the car"); *Williams v.*

13

*Planet Motor Car, Inc.*, 738 N.Y.S. 170, 175 (N.Y. Civ. Ct. 2001) (concluding that plaintiff may recover "repair costs, in addition to a refund of the purchase price" because "[w]hen the repairs are unsuccessful, the costs are similar to diagnostic costs. . . and] [w]hen the repairs are successful, they have conferred a benefit upon the repurchasing seller").

In the event that these damages exceed $1,000, she would not be entitled to punitive damages.  *See* N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to . . . recover his actual damages or fifty dollars, whichever is greater . . . [, and] [t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.").  In the event these damages do not exceed $1,000, Plaintiff would be entitled to recover compensatory damages plus punitive damages in an amount not to exceed $1,000.  *Id.*

Based on a liberal construction of the allegations in the Complaint, the Court finds that Plaintiff has alleged facts plausibly suggesting that, in the event she succeeds on her consumer fraud claim, she may recover, at most, $36,123.79 in compensatory damages (i.e., damages to compensate her for the purchase price, repair costs, financing, and loss of use before she informed Defendants that she was revoking the agreement).[7]  Because this amount exceeds

---

[7]       This figure is based on a liberal calculation of the following items: (1) the purchase price of $20,876; (2) finance expenses of $4,765.80; (3) repair costs of $3,781.99 (assuming Plaintiff has the vehicle repaired); (4) $400 for a vehicle inspection; (5) $4,500 for loss of use, calculated by using a rate of $50 per day (which Plaintiff conclusorily alleges to be the daily value rate) for 90 days, assuming, generously, that "shortly after the purchase," which is when Plaintiff alleges she notified Defendant Volvo that she was rescinding the contract, occurred, at the latest, three months after the purchase; and (6) $1,800 in storage fees, calculated by using a rate of $20 per day for the same 90-day period.  The Court notes that Plaintiff may not recover repair costs if she does not have the vehicle repaired.  Similarly, Plaintiff may not recover loss-of-use and/or storage costs after the expiration of the 90-day period (if she has not made a reasonable attempt to have the vehicle repaired or sold, or its title transferred back to

$1,000, she is not entitled to punitive damages.  As a result, the Court finds that the Amended

Complaint does not allege, on its face, facts plausibly suggesting that the amount in controversy

exceeds the jurisdictional minimum of $75,000.

      **C.**    **Plaintiff's Claim that Defendants Committed Common-Law Fraudulent**
              **Misrepresentation and Fraudulent Concealment**

As indicated above in Part I.B. of this Decision and Order, Defendants seek the dismissal

of this claim because (1) Plaintiff is not entitled to punitive damages under 28 U.S.C. §1332,

under the circumstances, and (2) as a result, the amount of available damages that Plaintiff seeks

fails to exceed the jurisdictional amount of $75,000.  Based on the current record, the Court

accepts Defendants' argument.

        **1.**    **Defendants' Argument that Plaintiff Is Not Entitled to Punitive**
                **Damages Under the Circumstances**

To properly analyze the first argument, the Court must engage in the same choice-of-law

analysis as described above in Part III.B of this Decision and Order.

        **a.**    **Conflict-of-Law Analysis**

Under both New York and Illinois law, a plaintiff must establish five required elements

to prevail on a claim of fraud.  More specifically, "a plaintiff must show th[e following]: (1) the

---

Defendant Volvo), because to do so would result in a windfall to Plaintiff and an unreasonable
amount of damages owed by Defendant Volvo (i.e., an amount well beyond the actual damages
that Plaintiff would have suffered if, after the expiration of the 90-day period, she had had the
vehicle repaired or sold, or its title transferred back to Defendant Volvo).  *Cf. Express Freight
Sys., Inc. v. Walter*, 632 N.Y.S.2d 733, 734 (N.Y. App. Div., 4th Dept. 1995) ("declin[ing] to
award plaintiff the full $22,300 claimed for loss of use of the tractor [because] . . . the value of
the tractor at the time and place of the taking was $8,500[, and] [u]nder the circumstances, it
would be unreasonable to hold defendant liable for loss of use damages greater than the value of
the converted property"); *Buford v. Gen. Motors Corp.*, 451 S.E.2d 293, 299-301 (N.C. 1994)
(conditioning refund to owners on their return of defective vehicle to manufacturer, because
contrary ruling would result in "windfall" to owners, whether that issue were analyzed under
state's "Lemon Law" or equitable principles).

defendant made a false representation of a material fact; (2) with knowledge of its falsity; (3) with scienter, namely an intent to defraud the plaintiff; (4) and upon which the plaintiff justifiably relied; (5) thereby causing damage to the plaintiff." *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 (2d Cir. 1999) (applying New York law); *see also TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998) (applying Illinois law). Moreover, both states' laws recognize a right to punitive damages in fraud cases where "the defendant has committed a gross, wanton, or willful fraud or other morally culpable conduct in a sufficiently high degree." *New York Pattern Jury Instr.–Civil*, 3:20 (2010); *Giblin v. Murphy*, 73 N.Y.2d 769, 771 (N.Y. 1988); *see also AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir. 1990) (applying Illinois law).

However, under New York law, a showing of "public harm" is required to establish a claim for punitive damages in cases where the defendant's allegedly tortious conduct was "directly related to the contract between the plaintiff and defendant." *Carvel Corp. v. Noonan*, 350 F.3d 6, 25 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182 (N.Y. 2004); *see also Walker v. Sheldon*, 10 N.Y.2d 401, 406 (N.Y. 1961) (requiring showing of public harm to establish punitive damages claim by franchisee against franchisor for tortious interference with franchisee's prospective economic relations with customers). Whether conduct constitutes "public harm" generally depends on whether the conduct constitutes "a gross and wanton fraud upon the public" or "an isolated transaction incident to an otherwise legitimate business." *TVT Records v. Island Def Jam Music Groups*, 412 F.3d 82, 95 (2d Cir. 2005).

Conversely, under Illinois law, a showing of "public harm" does not *appear* to be required to establish a claim for punitive damages in such.[8] As a result, the Court will assume

---

[8]      From the Court's *sua sponte* review of the relevant case law, it appears to the Court that the closest that Illinois courts have come to imposing such a requirement is when a

that a conflict of law exists.

### b.   Contacts Analysis

Because this claim involves a tort, which in turn involves the issue of punitive damages, the Court will not repeat the governing contacts analysis previously recited.  Instead, the Court directs the parties to Part III.B.1.b of this Decision and Order.

For the same reasons stated in that section, the Court finds that New York law governs this claim.

### c.   Application of New York Law

As stated above in Part III.C.1.a of this Decision and Order, where the defendant's allegedly tortious conduct was directly related to a contract between the plaintiff and defendant, New York law requires a plaintiff to show "public harm" to establish a claim for punitive damages.  *Walker*, 10 N.Y.2d at 406; *Noonan*, 350 F.3d at 25.

Here, Plaintiff does not allege facts plausibly suggesting that Defendants engaged in fraudulent conduct that resulted in "public harm."  This is because the paragraphs of Plaintiff's Amended Complaint presenting her common-law fraud claim (i.e., Paragraphs 70 through 74) do not allege facts plausibly suggesting (or even conclusorily allege) the existence of "public harm." (Dkt. No. 21, at ¶¶ 70-74.)  Rather, the closest Plaintiff comes to alleging such facts is when she re-alleges, in Paragraph 70 of her Amended Complaint (the first paragraph in her presentation of her common-law fraud claim) all of the allegations contained in the other paragraphs of the

---

court of appeals held that a jury instruction did not violate defendant's due process rights, where the jury was instructed that punitive damages could be awarded only upon finding that  "public good require[d] it."  *See E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, *996* (Ill. App. Ct. 1993).  For the sake of argument, the Court will assume that the proposition "punitive damages may be awarded only when the public good requires them" is not logically equivalent to the proposition "punitive damages may be awarded only when defendants' conduct has caused public harm."  The Court would add only that, if the two propositions are in fact logically equivalent, then no conflict of law exists with respect to this claim.

Complaint, incorporating them by reference.  (*Id.*, at ¶ 70.)  Among those other paragraphs is

Paragraph 60, in which Plaintiff alleges that Defendant Volvo and its agents (which allegedly

includes Defendant Maguire Auto LLC), *inter alia*, "engaged in unfair or deceptive acts or

practices, or concealed, suppressed and omitted material facts, of which defendants knew at the

time of concealment, suppression, or omission . . . which resulted in public injury because of

violation of statutes with public interest impact and because of potential for repetition." (Dkt.

No. 21, at ¶ 60[b], [c].)  Furthermore, Paragraph 61 alleges that such acts "offended [New

York's] public policy of encouraging honest commerce[,] are . . . unethical . . . [, and] and

substantially injure customers . . . and thus are unable to defend themselves from sharp business

practices."  (*Id.* at ¶ 61[a]-[c].)

      Such conclusory allegations–unsupported by any factual allegation plausibly suggesting

that other individuals have been harmed by Defendants' actions, or that Defendants' actions

were directed to the consuming public at large–do not plausibly suggest "public harm."  As the

First Department of the Appellate Division explained when addressing analogous allegations:

> Even when viewed in the favorable light to which it is entitled on a
> motion to dismiss, the complaint fails to support a viable claim for
> punitive damages. Conspicuously absent from either the four corners
> of the complaint or the evidentiary material presented below . . . are
> any facts evidencing that the defendants' conduct–in failing to disclose
> a pre-sale repair to the plaintiff's Saab automobile–was part of a
> pattern of similar conduct directed at the public generally . . . .
> Plaintiff's general assertion that he was 'only one of many members of
> the public who entered the defendant [dealer's] showroom to purchase
> a 'new' car', is hardly sufficient to sustain a finding that defendants'
> conduct constituted a public wrong.  In this regard, the situation at bar
> is clearly distinguishable from that presented in *BMW of N. Am., Inc.
> v. Gore* (517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809), where an
> automobile manufacturer was shown to have adopted a nationwide
> policy of nondisclosure of pre-sale repairs, a policy implemented in
> connection with nearly 1,000 new car sales.

*Stegich v. Saab Cars USA, Inc.*, 676 N.Y.S.2d 756, 756 (N.Y. App. Div., 1st Dept. 1998).[9]

As a result, the Court finds that Plaintiff is not eligible to receive punitive damages on her common-law fraud claim.

### 2. Defendants' Argument that Plaintiff Fails to Meet the Amount-in-Controversy Requirement of 28 U.S.C. § 1332

Under New York law, the basic measure of damages for fraud is the actual pecuniary loss sustained as a result thereof. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (N.Y. 1996). The true measure of such damages generally is indemnity for the actual pecuniary loss sustained as a direct result of the wrong. *Id*. Thus, one injured by the commission of a fraud is entitled to recover such damages as will compensate her for the loss or injury actually sustained and place her in the same position that she would have occupied had the fraud not occurred. *See Kaddo v. King Service Inc.*, 250 A.D.2d 948, 949-50 (N.Y. App. Div., 3d Dept. 1998); *see also Hanlon v. Macfadden Publ'n*, 302 N.Y. 502, 511 (N.Y. 1951). Moreover, consequential damages can be recovered provided that they naturally flow from the fraud and recovery is limited to that necessary to restore the plaintiff to the position occupied before the commission of the fraud. *See Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 71-72 (N.Y. App. Div., 1st Dept. 1990).

---

[9]     *Accord, Mayline Enter., Inc. v. Milea Truck Sales,* 641 F. Supp.2d 304, 312 (S.D.N.Y. 2009) ("In this case, the undisputed evidence demonstrates that plaintiff was induced to enter into a contract by defendant's fraudulent misrepresentation about the actual mileage on the truck. . . . However, . . . plaintiff offers no evidence that Milea customarily alters odometers. Instead, plaintiff argues that the fraud was directed at the general public rather than the plaintiff individually because the truck was held out for sale to the general public with an altered odometer. The argument is logical, but plaintiff has still proven only a single incident of odometer alteration. Under New York law, plaintiff cannot recover punitive damages for that single incident of fraud."); *cf. Faden Bayes Corp. v. Ford Motor Co.*, 97-CV-1867, 1997 WL 426100, at *1-2 (S.D.N.Y. July 30, 1997) (assuming, for purposes of jurisdictional-amount analysis, that punitive damages were available on plaintiff's New York common-law fraud claim, because plaintiff had brought class action on behalf of all persons who had purchased or leased 1996 Ford Explorer Limited vehicles, based on Ford's false advertisements that each such vehicle would be equipped with "standard feature" of Automatic Ride Control).

As with Plaintiff's consumer fraud claim, application of the aforementioned cases would entitle Plaintiff to a refund of the purchase price, recovery for repair costs, and expenses in connection with financing the purchase.  *See Carbo Indus.*, 112 A.D.2d at 340; *Vernon*, 118 A.D.2d at 700; *Williams*, 738 N.Y.S. at 175.  Plaintiff would also be entitled to loss-of-use damages up until the time she informed Defendants that she elected to revoke the agreement.

Based on a liberal construction of the allegations in the Amended Complaint, the Court finds that, at best, these damages total $36,123.79.[10]  As a result, Plaintiff's Amended Complaint is dismissed.[11]

**ACCORDINGLY,** it is

**ORDERED** that Defendant Maguire Automotive LLC's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that Defendant Volvo Cars of North America, LLC's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 30) is **GRANTED**; and it is further

---

[10]   Aggregation is not appropriate when the claims are merely different bases for recovery on the same underlying injury.  *See Powers v. FMC Corp.*, 155 F. Supp.2d 307, 309-10 (E.D. Pa. 2001); *Frump ex rel. Aubuchon v. Claire's Boutiques, Inc.*, 10-CV-1106, 2011 WL 1103055, at *3 (W.D. Mo. Mar. 22, 2011).

[11]   Under New York's tolling statute, it appears that Plaintiff is free to re-file this action in state court, provided she does so within six months of the date of this Decision and Order.  *See* N.Y. C.P.L.R. § 205(a); *see also Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1073 n.21 (2d Cir. 1977) (noting that, "under the tolling provisions applicable to the [New York] state statute of limitations, it would appear that defendants are free to bring a separate action on their third and eighth counterclaims in state court, without fear of the limitations period having run during the pendency of this suit"); *Williams v. CF Med., Inc.*, 06-CV-0827, 2009 WL 577760, at *1 n.1 (N.D.N.Y. Mar. 4, 2009) (McCurn, J.) (dismissing state law claim for lack of subject matter jurisdiction based on plaintiff's failure to meet "his burden of proving that the amount in controversy exceeds the jurisdictional minimum," but noting that "Plaintiff is not precluded from bringing his breach of contract claim in state court, as the state statute of limitations has been tolled during the pendency of this action [pursuant to] N.Y. C.P.L.R. § 205(a)").

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 21) is **<u>DISMISSED</u> without**

**prejudice** to refiling in state court within the applicable limitations period and tolling statute.

Dated: September 26, 2011
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge